SEALED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED BY ___cas___ D.C.

SEP 19 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

UNITED STATES OF AMERICA

Plaintiff,

vs.                                                          CASE NO. 23-CR-80126-DMM

CHAPIN HUFFMAN,

Defendant.
_____/

# DEFENDANT CHAPIN HUFFMAN'S PSR OBJECTION AND SENTENCING MEMORANDUM

The Defendant, Chapin Huffman, through undersigned counsel, respectfully files this objection to his pre-plea presentence investigation report ("PSR") [D.E. No. 22] pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure and the Due Process Clause of the United States Constitution. Additionally, Mr. Huffman files this Sentencing Memorandum and requests a sentence of time served (5 months and 17 days in prison), and states as follows:

## Sentencing Guidelines

The PSR sets forth a guidelines range of 21-27 months in prison, based upon a Total Offense Level of 15 and a Criminal History Category II. For the reasons set forth herein and in his PSR objection, the correct guidelines range is 12-18 months in prison, based upon a Total Offense Level of 12 and a Criminal History Category II.

## Unresolved PSR Guideline Objection

Mr. Huffman objects to Paragraphs 8, 9, and 27 of the PSR. Paragraphs 8 and 9 are factually accurate but are not part of the "offense conduct" because the offense ended on March 12, 2023. Paragraph 27 sets forth a 4-level upward adjustment based upon the offense or relevant conduct involving 8-24 firearms.

The facts of the offense in this case are simple and took place on a single day. Mr. Huffman purchased two firearms on March 12, 2023. When he completed the ATF Form 4473, he falsely stated that he was at that time not a user of illegal narcotics. In fact, he was a user of marijuana. At that point, the offense was completed.

The 4-level upward adjustment for 8-24 firearms does not apply in this case for two reasons. First, the plain language of USSG § 2K2.1(b)(1) directs the court to apply the adjustment only where "the offense involved three or more firearms." Here, the offense (making a false statement on the ATF form) is the <u>only</u> criminal offense and involved two firearms. As such, the adjustment does not apply based upon the plain language of the guideline. Furthermore, the unrelated firearms are not relevant conduct as defined by the Guidelines. Relevant conduct consists <u>only</u> of "all acts . . . committed . . . or willfully caused by the defendant . . . that occurred **during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.**" USSG § 1B1.1(a)(1)(A) (emphasis added).

2

Here, Mr. Huffman's offense ended on March 12, 2023. The other firearms that were in Mr. Huffman's possession at the time of him being committed pursuant to the Baker Act were unrelated to the offense of conviction, were in his possession long after the charged offense was completed, and do not constitute part of "the offense" as noted in § 2K2.1(b). Additionally, the unrelated firearms are not relevant conduct pursuant to USSG § 1B1.3 because they were not possessed in preparation for his false statements on March 12, in relation to his false statements on March 12, or as part of some effort to avoid detection of his false statement on March 12. Because the other firearms were possessed long after the offense of conviction was completed, the 4-level enhancement for the number of firearms does not apply.

If the Court grants this objection, the Total Offense Level will be 12, the Criminal History Category will be II, and the guideline range will be 12-18 months in prison.

### Application of the § 3553(a) Sentencing Factors

The Court is fully aware of the applicable sentencing factors and its sentencing discretion, so counsel will not waste the Court's time setting forth the factors or the law in that area. Instead, this memorandum will discuss the factors applicable to Mr. Huffman's case which justify a sentence of time served (5 months and 17 days in prison).

3

1. <u>The Nature and Circumstances of the Offense</u>

The facts of this case are straightforward - Mr. Huffman purchased two firearms on March 12, 2023. When he completed the ATF Form 4473, he falsely stated that he was at that time not a user of illegal narcotics. In fact, he was a user of marijuana at that time. At that point, the offense was completed. Mr. Huffman thereafter committed no further crimes and did nothing illegal or dangerous with those firearms. This was a non-violent offense. It is essentially a false statement case.

Had Mr. Huffman not had his decade-old high school notebook in his car, this case would likely not be before this federal court. Rather, Mr. Huffman (who was not a felon) would have been admitted to the hospital pursuant to the Baker Act and probably charged with a misdemeanor for possession of marijuana. Without the notebook, this case is likely already resolved for a withhold of adjudication and court costs in state court.

This case was charged in federal court because the government was justifiably concerned about Mr. Huffman's state of mind and intentions. It is understandable that – at first glance – the government chose to move forward with a federal case because of the fear that Mr. Huffman had ideas of a mass shooting. Mr. Huffman does not blame the United States for taking steps to ensure the safety of the community, especially in light of all-too-frequent mass shootings that haunt our nation. However, now we know that the writings in Mr. Huffman's vehicle were from about a decade

ago – when he was a high school student – and had no relation to the present or any planned acts of violence as an adult. And there is no other evidence to suggest that Mr. Huffman had any intention of doing anything harmful to others. The Court may certainly consider in evaluating the nature of the offense that it was misunderstood circumstances that led this case down the path of a federal felony offense rather than a simple misdemeanor marijuana offense.

2. The History and Characteristics of Mr. Huffman

The PSR sets forth an exhaustive history of Mr. Huffman's life and this memorandum will not repeat it all. *See* PSR ¶¶ 45-63. Mr. Huffman clearly had a difficult childhood and adolescence. His father was an alcoholic and abusive to him and his mother, creating a terrible home life for Mr. Huffman. At a point, his father threatened suicide and told Mr. Huffman (then a child) that if he (the father) died, it would be Mr. Huffman's fault. Eventually, his parents divorced and his father died of natural causes when Mr. Huffman was just fifteen years old.

Meanwhile, as he grew up, Mr. Huffman realized he was bi-sexual. When his father found his diary and discovered Mr. Huffman's sexual orientation, he confronted him and threatened to tell his school. As a teen, he suffered abuse and ridicule from classmates. He became stressed, depressed, vulnerable, and misunderstood. He withdrew socially and went through a phase in which he put dark thoughts about his classmates down on paper – which are the notebooks recovered at

5

the time of his arrest 10 years later. As an adult, as described in detail in the PSR, Mr. Huffman suffers from mental health and substance abuse issues that require treatment, medication, and ongoing counseling.

Mr. Huffman's blameworthiness is mitigated by his long-standing drug addiction. As the PSR demonstrates, Mr. Huffman's use of illicit substances began at the age of 14. *See* PSR at ¶ 64. At the time of the instant offense, Mr. Huffman was consuming marijuana. Thus, it seems evident that the defendant's substance abuse issues contributed to his criminal conduct. But merely stating that Mr. Huffman committed his crime in part due to his addiction does not provide mitigation unless one comprehends that a defendant's drug habit is a manifestation of mental illness – a disorder that overtakes one's judgment and will.

To be sure, while addiction has often been viewed as the result of a lack of willpower and character, narcotic dependence is a form of mental illness.[1] As such, it mitigates the crime and punishment to ensue. *See United States v. Mosley*, 277 F.3d 1294, 1298 (N.D. Ala. 2017) ("Given what substance abuse does to the brain, the court is unwilling simply to chalk up Mosley's difficulties to a character flaw and lock

---

[1] For nearly 100 years, the United States Supreme Court has recognized addiction as a medical disease. *See Linder v. United States,* 268 U.S. 5, 18 (1925) (noting that addicts "are diseased and proper subjects for [medical] treatment"); *see also Robinson v. California,* 370 U.S. 660, 667 (1962). The scientific research confirms that "[drug addiction] is considered a brain disease because drugs change the brain—they change its structure and how it works." *United States v. Hendrickson*, 25 F.Supp.3d 1166, 1172 (N.D. Iowa 2014).

him away, at least without first giving proper weight to whether and how that mental disorder affects his culpability for his conduct.").[2]

As *Mosely* points out, the American Psychiatric Association's Diagnostic and Statistical Manual–V ("DSM–V") consider substance use disorders as a class of mental disorder like Schizophrenia, Bipolar Disorders, and Depression.[3] *See id.* Drug addiction is a mental illness "because addiction changes the brain in fundamental ways, disturbing a person's normal hierarchy of needs and desires and substituting new priorities connected with procuring and using the drug. The resulting compulsive behaviors that override the ability to control impulses despite the consequences are similar to hallmarks of other mental illnesses." National Institute on Drug Abuse, *Is Drug Addiction a Mental Illness*? https://www.drugabuse.gov/publications/research-reports/comorbidity-addiction-other-mental-illnesses/drug-addiction-mental-illness (last visited Feb. 7, 2022).[4]

---

[2] *See also United States v. Walker*, 252 F.Supp.3d 1269 (D. Utah 2017) (finding that defendant's long-standing addiction was a mitigating factor); *Hendrickson*, 25 F.Supp.3d at 1172–73 (same); *United States v. Cani*, 545 F.Supp. 2d 1235 (M.D. Fla. 2008) (Conway, J.) (departing downward to 60 months imprisonment from guideline range of 262 to 327 months based in part on Defendant's heroin addiction).

[3] According to the DSM–V a 'mental disorder' is "a syndrome characterized by clinically significant disturbance in an individual's cognition, emotion regulation, or behavior that reflects a dysfunction in the psychological, biological, or developmental processes underlying mental functioning." DSM–V at 20.

[4] Consistent with the finding of the National Institute of Drug Abuse, the DSM–V states:
An important characteristic of substance use disorders is an underlying change in brain circuits that may persist beyond detoxification, particularly in individuals with severe disorders. The behavioral effects of these brain changes may be exhibited in the

7

As one district court concluded, "[w]hile '[t]he initial decision to take drugs is mostly voluntary . . . when drug abuse takes over, a person's ability to exert self-control can become seriously impaired.' . . . Stated plainly, addiction biologically robs drug abusers of their judgment, causing them to act impulsively and ignore the future consequences of their actions." *United States v. Hendrickson*, 25 F.Supp.3d 1166, 1172–73 (N.D. Iowa 2014) (quoting Nora D. Volkow, *Preface* to National Institute on Drug Abuse, Drugs, Brains, and Behavior: The Science of Addiction 1 (2010)), http://www.drugabuse.gov/sites/default/ files/sciofaddiction.pdf). As *Hendrickson*, 25 F.Supp.3d at 1172-73, further explained:

> By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences.

Although committing a crime because of a drug habit does not provide a legitimate justification, the fact that Mr. Huffman's crime resulted from severe mental illness, which impacted both his judgment and will, does mitigate his culpability. *See id.; Mosley*, 277 F.3d at 1298. While his drug addiction does not excuse Mr. Huffman's crime, it does provide a compelling explanation for his lack of judgment in committing his offense.

---

repeated relapses and intense drug craving when the individuals are exposed to drug-related stimuli. These persistent drug effects may benefit from long-term approaches to treatment.
DSM–V at 483.

8

Moreover, in assessing Mr. Huffman's culpability, consideration of his drug addiction requires an examination of the causes that led to such an addiction. As noted in the PSR, Mr. Huffman used marijuana and other substances as a form of self-medication to treat his mental health problems including bipolar disorder. *See id.* at ¶¶ 123; 126. In turn, Mr. Huffman's mental health problems, including his bipolar disorder, undoubtably arise from his traumatic childhood. *See, e.g.*, PSR at ¶¶ 45-54. Mr. Huffman's childhood involved sexual abuse and significant and daily emotional abuse. *Id.*

The impact of this dysfunctional background on Mr. Huffman's development cannot be overstated. *See United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions."); *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens.").

It seems apparent that the blueprint for Mr. Huffman's conduct was written years before he committed his crimes. While Mr. Huffman's traumatic childhood and his subsequent drug abuse cannot excuse his conduct, it does explain and mitigate his actions. *See Atkins v. Virginia*, 536 U.S. 304, 305 (2002) ("As to retribution, the

severity of the appropriate punishment necessarily depends on the offender's culpability.").

Overall, Mr. Huffman is not a danger to the community and will succeed on supervised release and beyond. He has a loving and supportive mother to help him going forward. This is a young man that does not need prison. He needs help. The Probation Office in fact suggests special conditions of supervised release, including exactly what Mr. Huffman needs: mental health treatment and substance abuse treatment.

Mr. Huffman is not a danger to the community. He has no history of violent criminal behavior. After the offense, Mr. Huffman was evaluated by Dr. Sheila Rapa. *See* Report by Dr. Rapa dated May 9, 2023 (attached hereto as Ex. A). Dr. Rapa did a complete risk assessment and concluded that Mr. Huffman is not overly aggressive and is a "low risk of violent recidivism." *Id.* at 6-7.

Mr. Huffman is obviously very remorseful for his offense. Not only did he plead guilty quickly, but he is also quite apologetic, stating that he "fully and unequivocally accept[s] responsibility," calling his own actions "wrong" and stating he is "incredibly sorry." PSR ¶ at 18.

Mr. Huffman lands in Criminal History Category II based upon two misdemeanor convictions – 1) a possession of marijuana from 2013 (a decade ago); and 2) a DUI five years ago. As of November 1, 2023, the Guidelines will be amended

to state that where a defendant receives a criminal history point for misdemeanor marijuana possession, it is appropriate for a court to depart downward. In this instance, the Court should take Mr. Huffman's meager criminal history into account and vary downward to Criminal History Category I, for Category II overstates the seriousness of his criminal history. The Court should also take his limited and minor criminal history into account in assessing Mr. Huffman's history and characteristics.

3. The Need for Punishment, Deterrence, and Rehabilitation

Mr. Huffman deserves punishment for his crime. As to pure punishment, spending nearly six months in the Palm Beach County Jail is sufficient punishment in this case. The county jail is far worse punishment than time spent in a federal prison camp. Mr. Huffman, having never been in jail, has struggled with being in jail this long. He gets sporadic or inconstant medical and mental health treatment. He is eager to be reunited with this mother and receive the counseling and medications he needs to be a productive, successful, and law-abiding young man.

Mr. Huffman does not need a long prison sentence to deter him from committing another criminal offense. While Mr. Huffman would benefit from drug treatment and mental health counseling, he would benefit most from obtaining those services under the supervision of the Probation Office while on supervised release and with the support of his family. Moreover, as part of the punishment for this

offense, Mr. Huffman will become a convicted felon and no longer be permitted to possess firearms.

## Conclusion

For the reasons discussed herein, a sentence time served (5 months and 17 days) is sufficient but not more than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Mark P. Rankin
Mark P. Rankin
Florida Bar No. 0177970
The Law Office of Mark P. Rankin, P.A.
1410 N. Westshore Blvd., Ste. 200
Tampa, FL 33607
Telephone No. (727) 365-1751
Email: mark@rankinlawoffice.com

/s/ Greg Rosenfeld
Gregory Rosenfeld
Florida Bar No. 92006
Law Offices of Greg Rosenfeld, P.A.
515 N. Flagler Drive, Suite P-300
West Palm Beach, FL 33401
Office: (561) 409-5804
Email: greg@rosenfeldlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of September 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the AUSA of record and counsel for any co-defendants.

/s/ Mark P. Rankin
Mark P. Rankin